**Meg DHAMER, on behalf of herself and all. others similarly situated, Plaintiff,**

v.

**BRISTOL–MYERS SQUIBB COMPANY and Cephallon Laboratories, Defendants.**

No. 98 C 2243.

United· States District Court, N.D. Illinois, Eastern Division.

Nov. 18, 1998.

Ronald S. Goldser, Zimmerman and Reed, Minneapolis, MN, James W. Johnson, Goodkind, Labaton, Rudoff & Sucharow, New York City, Aron D. Robinson, Chicago, IL, Robert J. Sheppard, Sheppard, Weisberg & Miller, San Francisco, CA, for Plaintiff.

Julian Solotorovsky, Peter E. Carlson, Kelley, Drye & Warren, Jeffrey Singer, Jennifer K. Fardy, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, John F. Brenner, McCarter & English, Newark, NJ, for Defendants.

### MEMORANDUM OPINION AND ORDER

HART, District Judge.

This is a putative class action brought by named plaintiff Meg Dhamer ("plaintiff" or "Dhamer") against defendant Bristol–Myers Squibb Co. ("defendant" or "BMS") seeking damages and injunctive relief.[1] Plaintiff's five count complaint alleges that a prescription pain relief product, Stadol Nasal Spray ("Stadol NS"), sold by defendant was dangerous, defective, addictive and did not bear adequate warnings. Count I alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, count II alleges violations of the New Jersey Consumer Fraud Act, count III alleges breach of implied warranties of merchantability and fitness for a particular purpose, count IV alleges negligence and negligent misrepresentation, and count V seeks medical monitoring.[2] Plaintiff's motion only seeks certification of a class for Counts I, II, and V of the complaint.

Pursuant to Rules 23(b)(3) or 23(b)(2) of the Federal Rules of Civil Procedure, plaintiff seeks to certify a class of "all United States residents who purchased and used Stadol [NS]," (the "Medical Monitoring Class"). On behalf of the proposed class,

1. Plaintiff has also sued Cephalon, Inc. but does not seek to certify a class with respect to Cephalon.

2. A claim for medical monitoring lies when a plaintiff seeks compensation for a toxic exposure that has not yet produced any physical manifestation of injury or disease. Although the viability of a cause of action for medical monitoring has not yet been addressed in many jurisdictions, courts that have recognized the claim have concluded that a plaintiff may recover the cost of diagnostic medical evaluation proved to be proximately caused by the defendant's wrongdoing. *See, e.g., In re Paoli R.R. Yard PCB Litigation,* 916 F.2d 829, 852 (3d Cir.1990); *see also Carey v. Kerr–McGee Chem. Corp.,* 999 F.Supp. 1109 (N.D.Ill.1998).

plaintiff seeks to establish a court supervised medical monitoring program to identify those Stadol NS users who have become addicted to the drug and to pay for medical expenses related to treatment of addiction. In addition, plaintiff also seeks certification of a subclass of the Medical Monitoring Class including "all Stadol NS users who became addicted to the drug." On behalf of this subclass, (the "Consumer Fraud Subclass"), plaintiff seeks to recover money that subclass members spent on Stadol NS pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8–2 *et seq.* and/or the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1.

Plaintiff contends that all prerequisites for class certification have been met and that certification is proper under Rule 23(b)(3) or 23(b)(2). Defendant argues that individual issues predominate precluding certification of the class and that a nationwide class is not a superior method for adjudicating the dispute.[3]

## I. BACKGROUND

According to the allegations of the complaint, the facts are as follows. Defendant supplies butorphanol tartrate under the brand name "Stadol NS." Butorphanol tartrate possesses narcotic properties and was originally used by physicians in hospitals to treat post-operative pain and administered to the patient by injection. The Food and Drug Administration ("FDA") granted BMS approval to sell Stadol in a more readily accessible form as a nasal spray.

After receiving FDA approval, BMS marketed Stadol NS to individuals who suffered from migraine headaches and other chronic pain. Plaintiff alleges that BMS represented to the FDA that Stadol NS had few of the addictive qualities of other narcotics and would be used in a manner consistent with its prior use as temporary pain relief and would not be for prolonged or repetitive use. Plaintiff alleges that BMS marketed Stadol NS to individuals plagued with chronic pain in a manner inconsistent with its representations to the FDA.

By 1993, there were increasing reports of drug dependance involving Stadol NS. BMS failed to provide warnings to physicians that cautioned about the possibility of abuse.[4] From 1992 to 1995 BMS failed to adequately disclose the addictive possibilities of Stadol NS to physicians and the public.

In 1997, the Drug Enforcement Agency ("DEA"), with the support of BMS, classified butorphanol as a Schedule IV controlled substance due to the occurrence of significant abuse. Schedule IV is a restrictive category reserved for drugs with the potential for abuse.[5]

Plaintiff's experience with Stadol began in 1992 when she suffered a serious back injury and her treating physician prescribed Statol NS for relief of her back pain. Plaintiff alleges that, consistent with BMS marketing,

---

3. Defendant's motion to strike plaintiff's attachment to her reply is denied. Instead, defendant's alternative request to file a surresponse is granted and the surresponse has been considered as well as plaintiff's entire reply.

4. Defendant contends that FDA-approved product literature, as it appeared in the 1994 Physicians' Desk Reference, available to physicians did contain the following warnings:

-"Although the mixed agonist-antagonist opioid analgesics, as a class, have lower abuse potential than morphine, all such drugs can be and have been reported to be abused."
—"Among 161 patients who used Stadol NS for two months or longer approximately 3% had behavioral symptoms suggestive of possible abuse."
—"Special Care should be exercised in administering butorphanol to emotionally unstable pa-

tients and to those with a history of drug misuse. When long-term therapy is necessary, such patients should be closely supervised."
—"Because of its opioid antagoist properties, butorphanol is not recommended for use in patients dependent on narcotics."

5. There are five schedules of controlled substances established by the Controlled Substances Act, schedules I, II, III, IV, and V. 21 U.S.C. § 812. Schedule I drugs are substances with high potential for abuse while drugs categorized in Schedules II, III, IV, and V have relatively lower potential for abuse. Schedule IV drugs are those substances found to have a low potential for abuse relative to the drugs or other substances listed in lower numbered Schedules. Nevertheless, abuse of the substance may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in the schedule.

her physician represented that Stadol NS was safe and non-addictive. In June of 1994, for financial reasons, plaintiff briefly stopped taking Stadol NS. During the time she stopped, plaintiff experienced severe diarrhea, vomiting, sore throat, insomnia, electric impulses, shaking and sweating. Her symptoms were diagnosed as withdrawal from Stadol NS and she was advised that two to three weeks of detoxification at a medical facility would be required to overcome the drug dependence.

Currently, plaintiff continues to use Stadol NS on an almost daily basis. She uses between half and a whole bottle of nasal spray each day and spends approximately $12,000 to $24,000 annually to support her habit.

## II. STANDARD OF REVIEW

To merit certification, a proposed class must first satisfy prerequisites set forth in Federal Rule of Civil Procedure 23(a), which provides that one class member may sue as a representative on behalf of others in the class when: (1) the class is so numerous that joinder is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. In addition, one of the Rule 23(b) requirements must be satisfied.

■■■ For purposes of considering a motion for class certification, the substantive allegations of the complaint are generally assumed to be true and it is also assumed that cognizable claims are stated. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The party seeking class certification assumes the burden of demonstrating that certification is appropriate. Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993). A determination of class certification does not focus on whether a plaintiff will prevail on the merits, but is limited to whether the requirements of Rule 23 are met. Eisen, 417 U.S. at 178, 94 S.Ct. 2140. Failure to meet any one of the prerequisites precludes certification of a proposed class. Retired Chicago Police Ass'n, 7 F.3d at 596.

When appropriate, an action may be brought or maintained as a class action with respect to particular issues, such that common issues can be resolved on a class-wide basis while "unmanageable" issues may be litigated at a later time. Fed.R.Civ.P. 23(c)(4). Certification of a class may be revoked or altered at any time before the final judgment if any inconsistency with Rule 23 requirements appears. Fed.R.Civ.P. 23(c)(1).

### A. Requirements of Fed.R.Civ.P. 23(a)

#### 1. Numerosity

■■■ Plaintiff must demonstrate that the proposed class is so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). To satisfy this numerosity requirement, it is not necessary to determine the precise number of members in a proposed class, a reasonable estimate will suffice. See Marcial v. Coronet Ins. Co., 880 F.2d 954, 957 (7th Cir.1989); In re VMS Securities Litigation, 136 F.R.D. 466, 473 (N.D.Ill. 1991). Judicial economy and the ability of class members to initiate individual suits are also proper considerations in determining whether joinder is impracticable. Patrykus v. Gomilla, 121 F.R.D. 357, 360–61 (N.D.Ill. 1988).

■■■ Plaintiff estimates, without supporting documentation, that the Medical Monitoring Class consists of up to 1.6 million individuals, based on that same number of prescriptions for Stadol NS issued in the United States by 1996. It is not clear from plaintiff's pleading whether each prescription was issued to a different individual. There also remains some question as to whether 1.6 million prescriptions directly translates into 1.6 million individual Stadol NS users. Nevertheless, it is reasonable to infer based on the facts alleged that Stadol NS users number in the thousands and reside in several different states making joinder of all class members impracticable. See In re Copley Pharmaceutical Inc., 158 F.R.D. 485, 488 (D.Wyo.1994) (finding that defendant distributed drug and plaintiffs lived in jurisdictions throughout the country satisfies numerosity).

Plaintiff will likely be able to identify individuals who purchased and used Stadol NS through a review of prescription records.

Accordingly, the numerosity requirement of Rule 23(a) is satisfied with respect to the proposed Medical Monitoring Class. While the number of persons in plaintiff's proposed subclass of those addicted to Stadol NS is not as easily determined as the number of sales or prescriptions, it is reasonable to infer from the facts alleged that the number of addicted persons may be so great as to make joinder impracticable.[6]

### 2. Commonality

 Plaintiff must demonstrate that there are questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). A common nucleus of operative fact is usually enough to satisfy the commonality requirement. *Rosario v. Livaditis,* 963 F.2d 1013, 1017–18 (7th Cir.1992). The Rule 23(a)(2) threshold of commonality is not high, it "requires only that resolution of common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Indus. Inc.,* 782 F.2d 468, 472 (5th Cir.1986); *see also Wesley v. General Motors Acceptance Corp.,* 1992 WL 57948, at *3 (N.D. Ill Mar. 20,1992) ("the low commonality hurdle is easily surmounted").

 Plaintiff argues that common questions of law and fact include, but are not limited to, the following: whether Stadol NS was negligently developed, manufactured and/or tested by defendant; whether and when defendant knew or should have known that the drug was highly addictive prior to marketing it; whether warnings placed on Stadol NS were inadequate relative to the danger of addiction and whether warnings were deceptive in light of what defendant knew or should have known about the addictive nature of Stadol NS; defendant's methods of promoting Stadol NS; whether Stadol NS caused class members to become addict-

ed to it; defendant's methods of testing Stadol NS and reporting results to federal and state regulatory agencies; whether defendant concealed adverse information; whether defendant made efforts to cure defects in Stadol NS.

Although, as defendant notes, the facts underlying each of plaintiff's claims are likely to vary, the claims arise from the same set of broad circumstances, the alleged failure to warn on the part of BMS. Plaintiff's factual and legal allegations of liability are sufficient to meet the low threshold of commonality as the allegations include similar common issues that would be a significant part of any plaintiff's individual case. Although the question of addiction will necessarily involve individual issues, these individual differences bear more on the Rule 23(b)(3) assessment of predominance and superiority, than on commonality. *See Castano v. American Tobacco Co.,* 160 F.R.D. 544, 550 (E.D.La.1995). Individual issues present here do not prevent plaintiff reaching the low threshold of commonality.

### 3. Typicality

 The typicality requirement primarily focuses on whether the named plaintiff's claims have the same essential characteristics as the claims of the class at large and is designed to prevent an instance where the legal theories of the named plaintiff may potentially conflict with those of absent plaintiffs. *See Retired Chicago Police Ass'n,* 7 F.3d at 597; *Arch v. American Tobacco Co., Inc.,* 175 F.R.D. 469, 478 (E.D.Pa.1997). A plaintiff's claims are typical if arising from "the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). It is only necessary for the claim of the named plaintiff and the claims of the class at large to have the "same essential characteristics," there may be factual differences. *Retired Chicago Police,* 7

---

6. Among 161 patients who used Stadol NS for two months or longer, approximately 3% had behavioral symptoms suggestive of possible abuse. Depending on whether a large enough number of persons with Stadol NS prescriptions took the drug for the longer than recommended

time period, even a small percentage of persons demonstrating symptoms suggestive of abuse could result in a number large enough to satisfy the numerosity requirement. *Cf. Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986) (29 class members satisfies numerosity).

F.3d at 596–97. Typical does not mean identical, the defendant's conduct and the plaintiff's legal theory are the primary considerations. *Rosario,* 963 F.2d at 1018.

■ Although the alleged harm suffered by plaintiff may differ in degree from that experienced by others in the class and each will require individual proof, the underlying claim is essentially the same. Dhamer alleges that she took Stadol NS for pain and became addicted. She shares a sufficient identity of interest with other class members who abused defendant's product. Plaintiff has incentives that align with those of absent plaintiffs to obtain treatment for substance abuse and reimbursement of money spent on Stadol, the interests of absent plaintiffs will be fairly represented by her. Accordingly, the typicality requirement is satisfied.

### 4. Adequacy of Representation

■ To be an adequate class representative, a named plaintiff must: (1) not have claims which are antagonistic to or conflict with those of the other class members; (2) have sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) have competent and experienced attorneys that are generally able to conduct the litigation vigorously. *Gammon v. GC Services. Ltd. Partnership,* 162 F.R.D. 313, 317 (N.D.Ill.1995).

Plaintiff will adequately protect the interests of the class as her interest in obtaining relief is in alignment with those of absent class members. She does not appear to have any interests which are adverse to other members of the classes. *See Rosario,* 963 F.2d at 1018 ("[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims.").

To determine if class counsel is qualified, courts look to the professional qualifications, skill, experience and resources of counsel. *See Armstrong v. Chicago Park District,* 117 F.R.D. 623, 630–31 (N.D.Ill.1987). In support of this motion, plaintiff's counsel have submitted a firm resume detailing sufficient prior experience with class action litigation. Plaintiff's counsel appear qualified and have demonstrated extensive prior experience in class action, medical monitoring, and consumer litigation. Accordingly, plaintiff satisfies the adequacy of representation requirement.

### B. Requirements of Fed.R.Civ.P. 23(b)

Having found the four prerequisites of Rule 23(a) satisfied, whether the proposed class and subclass meet the requirements of Rule 23(b) must now be determined.

Plaintiff seeks to certify the proposed Medical Monitoring Class pursuant to Rule 23(b)(3) and/or 23(b)(2) and the proposed Consumer Fraud Subclass pursuant to Rule 23(b)(3). Rule 23(b)(3) requires a showing that "questions of law or fact common to the members of the class predominate and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Plaintiff seeks, pursuant to Rule 23(b)(2) or (3), formation of the Medical Monitoring Class of all United States residents that used Stadol NS in order to establish a court-supervised fund to: (1) notify individuals who use Stadol NS of the addictive nature of the drug; (2) identify Stadol NS users who are addicted to the drug; (3) fund studies on the long-term effects of Stadol NS on its users; (4) fund research into possible cures for the detrimental effect of Stadol NS (including treatment for Stadol NS addiction); (5) gather and forward to treating physicians information related to the diagnosis and treatment of drug addiction and other injuries from Stadol NS; and (6) treatment of Stadol NS addicts. Pursuant to Rule 23(b)(3), plaintiff seeks formation of the Consumer Fraud Subclass for persons addicted to Stadol NS so they may recover damages under the Illinois and New Jersey statutes.

Defendant argues that, whether treated as a 23(b)(2) or (3) class, plaintiff's motion for certification should be denied because the primary relief sought is legal, not equitable. Defendant also contends that neither the predominance nor superiority requirements

of Rule 23(b)(3) are met. Defendant asserts that a number of individual issues predominate over any common issues and variations in state law will require a large number of individualized hearings, making manageability of the proposed Medical Monitoring Class difficult and an inferior method of resolving the claims.

### 1. Rule 23(b)(2)

Two basic requirements must be satisfied under Rule 23(b)(2): first, the party opposing the class must have acted in a consistent manner towards members of the class so that its actions may be viewed as a pattern of activity; and, second, final injunctive or corresponding relief must be appropriate. *See Buycks–Roberson v. Citibank Fed. Savings Bank,* 162 F.R.D. 322, 334 (N.D.Ill.1995); *Edmondson v. Simon,* 86 F.R.D. 375, 382–83 (N.D.Ill.1980).

■ A medical monitoring claim may properly be classified as injunctive relief and certified under Rule 23(b)(2). *See, e.g., In re NLO, Inc.,* 5 F.3d 154, 159 (6th Cir.1993); *but see, Thomas v. FAG Bearings Corp.,* 846 F.Supp. 1400, 1405 (W.D.Mo.1994) (denying certification and explaining that medical monitoring relief is "nothing more than compensation for necessary medical expenses reasonably anticipated to be incurred in the future."); *Werlein v. United States,* 746 F.Supp. 887, 895 (D.Minn.1990), *vacated in part on other grounds,* 793 F.Supp. 898 (D.Minn.1992) (rejecting medical monitoring claim that required defendant to pay lump sum into fund for plaintiff's use to obtain reimbursement for costs incurred for medical screening: "[p]ayment of cash by one party to reimburse other parties for costs incurred is not injunctive relief").

■ When an action for creation of a medical monitoring fund is primarily a suit for damages or incidental to claims for money damages, however, it is not appropriate for class certification under Rule 23(b)(2). *See Harding v. Tambrands Inc.,* 165 F.R.D.

623, 632 (D.Kan.1996) (certification of class action seeking injunctive relief in form of medical monitoring not appropriate where relief sought was primarily money damages); *Smith v. Brown & Williamson Tobacco Corp.,* 174 F.R.D. 90, 100 (W.D.Mo.1997) (denying Rule 23(b)(2) certification where relief requested along with plaintiff's many other claims for monetary relief demonstrated money damages to be primary relief sought). The dispositive factor that must be assessed to determine whether a medical monitoring claim can be certified as a Rule 23(b)(2) class is the type of relief a plaintiff actually seeks. *See Arch v. American Tobacco Co.,* 175 F.R.D. 469, 483 (E.D.Pa.1997).

Plaintiff alleges that defendant has acted on grounds generally applicable to the class in designing, manufacturing and selling an addictive drug without adequate warnings, and argues that creation of the Medical Monitoring Class pursuant to Rule 23(b)(2) to obtain the equitable relief of monitoring and treatment is appropriate. In support, plaintiff relies on *In re NLO, Inc.,* 5 F.3d 154, 159 (6th Cir.1993) (medical monitoring classes may be certified under Rule 23(b)(2)); *German v. Federal Home Loan Mortgage Corp.,* 885 F.Supp. 537, 559–60 (S.D.N.Y.1995) (medical monitoring of children exposed to lead to detect elevated blood lead levels conditionally found form of equitable relief where plaintiffs asked for numerous other forms of injunctive relief, not just medical monitoring); *Yslava v. Hughes Aircraft Co.,* 845 F.Supp. 705, 713 (D.Ariz.1993) (plaintiff's request for medical monitoring qualifies as injunctive relief because plaintiffs did not merely seek money); *Cook v. Rockwell Int'l Corp.,* 755 F.Supp. 1468, 1477 (D.Colo.1991);[7] *Barth v. Firestone Tire & Rubber Co.,* 673 F.Supp. 1466, 1478 (N.D.Cal.1987) (medical monitoring fund used to gather and forward to treating physicians information relating to the diagnosis and treatment of diseases that could result from plaintiffs' exposure to a toxin with unknown effects is equitable relief).

---

**7.** In light of a Tenth Circuit decision that found similar requests for medical monitoring relief to be "essentially a suit for damages," *Building & Construction Department, AFL–CIO v. Rockwell*

*Int'l Corp.,* 7 F.3d 1487, 1492 (10th Cir.1993), the *Cook* Court later decertified plaintiff's medical monitoring class. *See Cook v. Rockwell Int'l Corp.,* 181 F.R.D. 473 (D.Colo.1998).

Defendant argues that plaintiff's proposed Medical Monitoring Class is inappropriately brought under Rule 23(b)(2) because it is in reality a request for money damages because plaintiff seeks funds to treat individuals who are addicted to Stadol NS and other money damages. *See, e.g., In re Copley Pharmaceutical, Inc.*, 158 F.R.D. 485, 490 (D.Wyo. 1994) ("[t]o certify a class under Rule 23(b)(2) where the declaratory relief sought is incidental to the larger claims for damages would be contrary to the purposes of Rule 23(b)(2)"). Defendant identifies portions of plaintiff's pleadings as evidence that the primary relief sought is money damages for personal injury and economic loss, not equitable relief.

To determine whether named plaintiff seeks primarily equitable relief or money damages, plaintiff's specific request for relief must be closely scrutinized and consideration must be given to whether the "crux of the action is for money damages." *See Cook*, 181 F.R.D. at 479–80. Plaintiff's complaint seeks recovery of damages for emotional distress and fraud, refund of all purchase money spent on Stadol NS, and treble, punitive and exemplary damages. In her memorandum of law in support of class certification, plaintiff additionally represents that she seeks funds to treat class members addicted to Stadol NS.

Plaintiff also seeks relief in the form of sending notification of the addictive nature of the drug to individuals who use Stadol NS; a procedure for identifying Stadol NS users who are addicted to the drug; funding for studies on the long-term effects of Stadol NS on its users; funding for research into possible cures for the detrimental effect of Stadol NS; and a program for the sharing of information related to the diagnosis and treatment of drug addiction and other injuries from Stadol NS. If the relief being sought were to require defendant to perform these functions, the relief would be injunctive in nature. The relief sought, however, extends beyond injunctive relief. The plaintiff seeks funding for treatment, this alters the nature of the relief requested making plaintiff's claims no different than traditional money damages claims. *See Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir.1979) (plaintiff cannot transform claim for damages into equitable action by asking for injunction that orders payment of money); *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996).

While characterized by plaintiff as injunctive, the ultimate relief requested is in the form of money damages which when taken along with plaintiff's other claims for money, demonstrate that money damages is the predominant relief sought. *See Smith*, 174 F.R.D. at 100. Even if plaintiff's ultimate request for relief were not monetary, the proposed Medical Monitoring Class could not be certified under Rule 23(b)(2) because the central issue of addiction presented is so individual in nature as to preclude maintenance of the classes.

Although Rule 23(b)(2) does not expressly contain a predominance and superiority requirement as does Rule 23(b)(3), certification under Rule 23(b)(2) "does not relieve a court of its obligation to determine whether the existence of individual issues precludes certification." *Barnes v. American Tobacco Co.*, 176 F.R.D. 479, 500 (E.D.Pa.1997). A Rule 23(b)(2) class should actually have more cohesiveness than a Rule 23(b)(3) class. *Id.* As explained below in the Rule 23(b)(3) discussion, too many individual issues exist which prevent this case from proceeding as a class action. *Id.* at 499–500. Therefore, even if the relief sought is appropriately classified as injunctive relief obtainable for a Rule 23(b)(2) class, certification would be inappropriate here because individual issues predominate.

For the foregoing reasons, plaintiff has failed to meet the standard for class certification under Rule 23(b)(2).

### 2. *Rule 23(b)(3)*

In order to satisfy the requirement of predominance, the plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims. Although the Supreme Court has warned against considering the merits of a suit in evaluating a motion to certify, *Eisen*, 417 U.S. at 177–78, 94 S.Ct. 2140, a court may

look beyond the pleadings to determine whether the requirements of Rule 23 have been satisfied. *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996). A court must "understand the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of certification issues." *Id.* at 744.

■ Not only must a court look to the substantive law governing claims at issue in the case to determine the predominance of common issues, consideration must be given to how variations in state law affect predominance and superiority and how a trial on the merits would be conducted. *Castano*, 84 F.3d at 741; *see also In re American Medical Sys.*, 75 F.3d 1069, 1085–86 (6th Cir.1996) (granting mandamus in multi-state products liability action, in part because court "failed to consider how the law of negligence differs from jurisdiction to jurisdiction"). When individual issues that cannot be resolved on a class-wide basis dominate, the litigation should not proceed as a class action. *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 880 (D.S.D.1982).

■ Plaintiff argues that the Medical Monitoring Class as well as the Consumer Fraud Subclass may be properly certified under Rule 23(b)(3). Plaintiff contends that the key issues of general causation central to proving defendant's liability are common to all class members and appropriate for class certification. Issues identified by plaintiff as common to the proposed class are: when defendant learned or should have learned about the addictive nature of Stadol NS; whether defendant's warnings on Stadol NS addiction were inadequate or deceptive in view of all the information available; whether defendant's promoting Stadol NS negated warnings accompanying the product; and whether a medical monitoring program can be successful in identifying and assisting persons who are addicted to Stadol NS. Plaintiff also points out the inefficiency of individual

class members relitigating each of these issues.

Plaintiff acknowledges that individual causation and damages are matters which must be left for subsequent individual adjudication;[8] but asserts that the only significant individual issues are: whether a particular Consumer Fraud Subclass member is addicted to Stadol NS and the amount of damages a subclass member is entitled to based on Stadol purchases. Plaintiff submits that these issues can be readily resolved in large part through physician, hospital and pharmacy records.

Plaintiff argues that a class action is the superior means of realizing an efficient and fair adjudication of the controversy because individual class members have little incentive in controlling the prosecution of separate actions with respect to the equitable remedies sought in this case. Plaintiff argues that concentrating the litigation of identical claims in one forum is more efficient than multiple individual actions and any difficulties in managing the litigation do not preclude its maintenance as a class action. Further, plaintiff notes that the court may redefine the class and/or create or excise subclasses as may be necessary to adjudicate common issues.

Defendant argues that, consistent with a "national trend to deny class certification in drug or medical product liability/personal injury cases," plaintiff's motion must be denied because individual issues predominate and the class is neither manageable nor efficient. *In re American Medical Systems, Inc.*, 75 F.3d at 1089 n. 24 (compiling cases that deny certification in medical product context). Defendant also contends that differences in state law implicated by both the proposed Medical Monitoring and Consumer Fraud Classes make class treatment inappropriate. *See In re Rhone–Poulenc Rorer Inc.*, 51 F.3d 1293, 1304 (7th Cir.1995).

Defendant primarily relies on *Fisher v. Bristol–Myers Squibb Co.*, 181 F.R.D. 365 (N.D.Ill.1998) to support the argument that

---

8. Plaintiff suggests that this case could be tried in two phases: in Phase I, a jury would determine all common issues and all individual issues for the named plaintiff; and in Phase II, individual issues for other class members would be determined at separate hearings. *See Copley*, 158 F.R.D. at 492 (allowing class to go forward on common issues with class members pursuing individual cases in separate trials to determine injury and proper measure of damages).

plaintiff's motion must fail. In *Fisher,* Fisher sued BMS under a variety of tort, warranty and consumer fraud theories and sought certification of a class of "all persons throughout the United States from 1991 to the present, who are or were addicted to Stadol and/or died as a direct and proximate result of said addiction." The *Fisher* court declined to certify the proposed class of plaintiffs who allegedly abused Stadol NS, the product at issue in the present case. In reaching its conclusion, the *Fisher* court focused on variations in state law, the predominance of individual issues relating to addiction and proximate causation, the desirability of permitting individual plaintiffs to control their own law suits and the limited efficiency benefits that would flow from the proposed class.

Plaintiff attempts to distinguish *Fisher,* explaining that the *Fisher* plaintiff sought to represent a class of all persons who "were addicted to Stadol and/or died as a direct proximate result of said addiction." Plaintiff alleges that she is proceeding on a different theory than *Fisher.* Here, unlike *Fisher,* plaintiff argues that she is not seeking damages for personal injuries or making claims for negligence warranty or products liability because any monetary damages for the subclass would be limited to the cost of Stadol purchased, which plaintiff represents is easily determined.

Although plaintiff claims to seek recovery under a different theory than *Fisher,* a close examination of plaintiff's complaint reveals that she is proceeding on the same general theory of liability that directly relies on her ability to prove that Stadol NS is addictive and that she and others became addicted. The claims and defenses in this case present individual issues precluding class certification.

In reasoning applicable to this case, the *Fisher* court rejected claims similar to those raised in this case. As in *Fisher,* in order to obtain relief plaintiff must show that Stadol NS caused the complained of injuries.[9] Those members of the medical monitoring class seeking treatment will ultimately have to demonstrate their addiction and its causes. As the *Fisher* court observed, "addiction is not a simple concept. To find that a person is addicted to a particular substance, the fact finder must examine both biological and psychological evidence." *Fisher,* 181 F.R.D. at 370. Addiction is an individual inquiry not appropriate for class treatment. *Arch,* 175 F.R.D. at 488; *see also Barnes,* 176 F.R.D. at 500 ("whether or not an individual is addicted is a highly individualistic inquiry ... which cannot be resolved on a class-wide basis"); *Castano,* 84 F.3d at 746–747 (class treatment not superior given "difficulty of procedure for determining who is nicotine-dependent").

Even if a given plaintiff does demonstrate his or her addiction to the fact finder, the plaintiff must show that the physician would not have prescribed Stadol NS, if BMS had provided adequate warnings. *Fisher,* 181 F.R.D. at 370–71 (citing *Thomas v. Hoffman–La Roche, Inc.,* 949 F.2d 806, 812 (5th Cir.1992)). BMS defends that, as a prescription drug, warnings regarding Stadol NS run to the prescribing physician not the patient, the physician acts as a "learned intermediary" between the manufacturer and consumer. *See Crisostomo v. Stanley,* 857 F.2d 1146, 1152 (7th Cir.1988); *Kirk v. Michael Reese Hosp. and Med. Ctr.,* 117 Ill.2d 507, 111 Ill.Dec. 944, 949, 513 N.E.2d 387, 392 (1987).

As a prescription medicine, Stadol NS is not directly marketed to the consuming patient. Rather, physicians are advised about the product through professional trade publications and sales calls. Physicians determine whether or not to prescribe the medicine to a

---

9. Under the Illinois Consumer Fraud Act, 815 ILCS 505, a plaintiff must show: (1) that the defendants engaged in a deceptive act or practice; (2) intent on the defendant's part that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *See Adler v. William Blair & Co.,* 271 Ill.App.3d 117, 207 Ill.Dec. 770, 648 N.E.2d 226 (1995). Moreover, the plaintiff must establish that defendant's acts were a proximate cause of his or her damages. *See Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996). Similarly, under the New Jersey Consumer Fraud Act N.J.S.A., § 56:8–19, a plaintiff is required to prove that the unlawful consumer fraud caused his or her loss. *See Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 647 A.2d 454, 464 (1994).

particular patient and what to tell the patient. Where, as here, the medicine's warnings indicate a potential risk for abuse, determining exactly what was said or provided to each class member by his or her physician is central. Pharmacists may also make representations about the product. Additionally, the information available to the medical community changes over time. For instance, since October 1997, Stadol NS has been classified as a Schedule IV drug. Patients receiving the medication since that time may have received different information from their physicians and pharmacists than those who received Stadol NS before it was scheduled.[10] Thus, it is likely that no two patients receive exactly the same information. *See Blaz v. Galen Hosp. Illinois, Inc.*, 168 F.R.D. 621, 626 (N.D.Ill.1996) (denying class certification because typicality was lacking where warnings and information about X-ray treatments were not uniform).

In order to state a claim of consumer fraud, plaintiff must establish a deceptive act or misrepresentation which led to Stadol NS being prescribed. Different class members served by different physicians likely received different warnings or instructions. The claimed misrepresentations here, statements made or not made about the abuse potential for Stadol NS, turn on hundred or thousands of individual discussions among sales representatives and doctors and pharmacists throughout the nation for a period of six years. For each class member relevant issues would include what oral or written statements were provided to the physician, what warnings or instructions the physician passed on to the patient, and whether the physician relied on statements or his or her own knowledge, independent of the product literature.

In order to evaluate reliance under various state consumer protection laws and in order to evaluate proximate cause in tort claims,

the products warnings must be analyzed from the perspective of each prescribing physician or dispensing pharmacist. Accordingly, the role of the prescribing physician is central for a number of the issues plaintiff alleges that the proposed classes have in common relevant to product warnings, claimed misrepresentations, and proximate causation. The highly individualistic factual determinations associated with issues of addiction and misrepresentation preclude certification.

Similarly, legal questions are common only in a very general sense, but they do not predominate. While issues may be the same in all cases, consumer fraud and medical monitoring, the legal standards governing them are not the same throughout the country. Contrary to plaintiff's argument that only Illinois and New Jersey law apply, the court may have to apply the substantive law of the state where the claim of each class member arose and not New Jersey or Illinois law. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (courts "may not take a transaction with little or no relationship to the forum in order to satisfy the procedural requirement that there be a common question of law"); *In re Ford Motor Co. Ignition Switch Products*, 174 F.R.D. 332 (D.N.J. 1997) (due process requires individual consideration of the choice of law issues raised by each member's case); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 339 (N.D.Ill.1997) (ICFA does not apply to non-residents unless the deceptive act was perpetrated in Illinois).

Certification of the requested classes would also require examination of significant variations among the medical monitoring and consumer protection statutes of several states, as well as individual questions of reliance, proximate causation, statutes of limitations and damages precluding certification. *In re Rhone–Poulenc*, 51 F.3d at 1304.[11]

---

**10.** In addition, various states scheduled Stadol NS in different ways. For patients in those states, there may be greater variation as to the representations on which a consumer fraud action must be based.

**11.** The variability in state law distinguishes this case from those upon which plaintiff relies such

as *Day v. NLO*, 144 F.R.D. 330 (S.D. Ohio 1992) and *Yslava*, where medical monitoring claims arose out of alleged exposures to toxic substances produced at a single site in a single state. Those courts did not have to deal with differing state law standards, a problem the Seventh Circuit has identified as counseling against class certification. *In re Rhone–Poulenc*, 51 F.3d at 1304.

Plaintiff asserts that a state by state analysis of medical monitoring as a cause of action establishes the similarities of laws between the various states, and that "most variations in state law regarding medical monitoring are immaterial." *In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271, 287 (S.D.Ohio 1997). Plaintiff urges that any distinctions in the law of medical monitoring may be resolved by the creation of appropriate subclasses as in *Telectronics* where the class was divided into two subclasses, based on whether the plaintiffs' respective states required physical injury to recover for medical monitoring. *Id.*

Medical monitoring is not a uniform concept among the states; the elements a plaintiff must prove to establish a right to medical monitoring differ among the states. *See e.g., Redland Soccer Club, Inc. v. Department of the Army*, 548 Pa. 178, 696 A.2d 137, 145 (1997) (medical monitoring requires specific proof of negligence); *Bourgeois v. A.P. Green Industries, Inc.*, 716 So.2d 355 (La. 1998) (medical monitoring only applies to those at risk of contracting a latent disease). In some states, a plaintiff must show a present physical injury in order to state a medical monitoring claim. *See, e.g., Ball v. Joy Technologies, Inc.*, 958 F.2d 36, 39 (4th Cir.1991) (West Virginia and Virginia require that the plaintiffs demonstrate that they are suffering from a present, physical injury before they are entitled to recover medical surveillance costs); *Mergenthaler v. Asbestos Corp.*, 480 A.2d 647, 651 (1984) (in Delaware plaintiff must show physical injury before the defendants must bear expenses for medical monitoring). Other states do not require a plaintiff to show a present injury. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 786–87 (3d Cir.1994) (interpreting Pennsylvania law to set forth a four step test to determine when medical monitoring is appropriate physical injury not a necessary element); *Friends For All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 824–25 (D.C.Cir.1984) (District of Columbia recognizes a cause of action for medical monitoring without manifestation of physical injury). Some states do not even recognize a separate cause of action for medical monitoring. *Cf. Werlein v. United States*, 746 F.Supp. 887, (D.Minn.1990) In other states, costs associated with future testing may be an element of damages and not an independent cause of action. *See, e.g., Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515, 1523 (D.Kan. 1995) (medical monitoring claim may be recognized if plaintiff has not yet suffered injuries; otherwise, medical monitoring is merely a component of damages). Again, assessment of damages must of course follow a finding of liability. Liability in this instance can only be adjudicated on a claimant by claimant basis, applying a wide array of different and sometimes conflicting rules. *Fisher*, 181 F.R.D. at 371–72.

Although the general rules governing consumer fraud is "reasonably similar from state to state," *id.* at 372, and even if medical monitoring were similar across jurisdictions, class treatment is not a superior method of adjudicating the present dispute. In evaluating the requirement of superiority, Rule 23(b)(3) requires consideration of the following four factors: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action. Fed.R.Civ.P. 23(b)(3).

Efficiency and economy are the principle purposes of a class action procedure. *Buycks–Roberson*, 162 F.R.D. at 335. Here, as observed in *Fisher*, it is the case that a nationwide class is not a superior method for resolving consumer fraud claims because each prospective plaintiff is going to be involved in extensive individualized proceedings whether a consumer fraud class is certified or not. *Fisher*, 181 F.R.D. at 371–72; *see also, Castano*, 160 F.R.D. at 556–57 (medical monitoring claim so "inextricably intertwined" with issues of proximate cause and affirmative defenses that resolution of those issues would not materially advance case). Rule 23(c)(4)(A) certification of those limited issues that are common to the class would do little to advance the cases of individual plaintiffs:

[A]s is made clear in our earlier discussion of predominance, each prospective plaintiff

is going to be involved in extensive individualized proceedings regardless of whether we certify a class on the consumer fraud liability questions or not. Each plaintiff will have to prove causation and damages for their fraud claim in a separate proceeding, and they will have to bring entirely separate lawsuits if they desire to pursue other tort and warranty theories. In this setting, little efficiency is gained by singling out one or two discrete issues for class treatment.

*Fisher,* 181 F.R.D. at 373.

Variations in state law in this case will combine with factual variations in plaintiff's case to overwhelm any common issues. *See Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 618 (3rd Cir.1996) (factual differences when magnified by choice of law considerations, "eclipse any common issues" such that predominance requirement of Rule 23(b) cannot be met). Efficiency and economy will not be served by certification of the proposed classes.

IT IS THEREFORE ORDERED that defendant's motion to strike plaintiff's attachment to reply memorandum [22–1] is denied and defendant's alternative motion for leave to file a surresponse [22–2] is granted. Plaintiff's motion for class certification [14–1] is denied. A status hearing is set for November 25, 1998 at 9:15 a.m.