Jean CLAY, et al., Plaintiffs,

v.

The AMERICAN TOBACCO COMPANY,
Inc., et al., Defendants.

No. 97–CV–4167–JPG.

United States District Court,
S.D. Illinois.

July 9, 1999.

John Climaco, Jack Maistros, Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A., Cleveland, OH, Angela Parks, Roda & Nast, Lancaster, PA, Terry Goodman, Waite, Schneider, et al., Cincinnati, OH, Brocton Lockwood, Marion, IL, for plaintiff.

Frank N. Gundlach, Armstrong, Teasdale, L.L.P., St. Louis, MO, for American Tobacco Co., Inc., American Brands, Inc., Brown & Williamson Tobacco.

Larry E. Hepler, Burroughs, Hepler, et al., Edwardsville, IL, Hugh R. Whiting, Jones, Day, et al., Cleveland, Oh, for R.J. Reynolds Tobacco Company and The Tobacco Institute.

David B. Love, Winston & Strawn, Chicago, IL, Jeffery Weil, Dechert, Price, et al., Philadelphia, PA, for Philip Morris, Inc.

Edward S. Bott, Jr., Thompson, Coburn, Belleville, IL, John K. Sherk, Sherk, Hardy & Bacon, L.L.P., Kansas City, MO, for Lorillard Tobacco Co.

## *ORDER*

GILBERT, Chief Judge.

This matter is before the Court on the plaintiffs' motion for class certification. Doc. no. 168. The plaintiffs submitted a memorandum in support of their motion (doc. no. 169), and the defendants submitted a response (doc. no. 177). A hearing on the issue was held June 16, 1999, at which time the

Court heard oral argument in support of and in opposition to the plaintiffs' motion for class certification.

This case is a putative class action brought by five named plaintiffs on behalf of "all persons in the United States who, as children, purchased and smoked cigarettes designed, manufactured, promoted, or sold by the defendants. (Excluded from the class are residents of Louisiana, Maryland, New York, and Utah)." Doc. no. 168. The plaintiffs allege that, through various advertising and promotional campaigns, the defendants targeted America's youth for the illegal sale of tobacco products. This conduct, according to the plaintiffs, is actionable under theories of civil conspiracy, unjust enrichment, state consumer protection statutes, and sections 389 and 402A of the Restatement (Second) of Torts. Doc. no. 149. The plaintiffs seek "disgorgement of the profits received by defendants from these illegal cigarette sales to children," and "punitive or exemplary damages in an amount sufficient to punish defendants and to deter them and others from similar wrongdoing." Doc. no. 149. The plaintiffs attempt to distinguish this case from the several tobacco litigation cases in which class certification has been denied, explaining that "[t]his is an apples and oranges comparison." Unfortunately for the plaintiffs, however, these apples and oranges possess remarkable similarities and can be found at the base of the same barren tree. The named plaintiffs do not meet the typicality or adequacy of representation requirements of Rule 23(a), the requested relief does not fit within the purview of Rule 23(b)(2), and the proposed class would be unmanageable. Therefore, the motion for class certification is **DENIED**. Doc. no. 168.

## I. Facts

■ The Court accepts the allegations of the complaint as true when determining whether the proposed class should be certified. *Johns v. DeLeonardis,* 145 F.R.D. 480, 482 (N.D.Ill.1992). Accordingly, the following facts are taken primarily from the plaintiffs' Revised Third Amended Complaint. Doc. no. 149.

The American Tobacco Company, Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Company, Phillip Morris Inc., Lorillard Tobacco Company, Inc., and The Tobacco Institute, Inc., are the named defendants (collectively "the defendants"). All of the defendants, except The Tobacco Institute, manufacture cigarettes. The Tobacco Institute is joined as a defendant because it operated as the public relations and lobbying arm of the tobacco manufacturers. As an agent of the tobacco manufacturers, The Tobacco Institute participated in the promotion of cigarette sales to minors and is equally responsible.[1]

The defendants' cigarettes contain hazardous substances that cause serious and often fatal diseases. Although publicly denied by the defendants, their cigarettes also contain nicotine, an addictive substance that leads smokers to become dependent on cigarettes. In order to protect children from the harmful consequences caused by smoking cigarettes, every state, the District of Columbia, and Puerto Rico have enacted statutes that prohibit any person from selling or otherwise furnishing cigarettes to minors.

Despite the illegality of selling cigarettes to minors, the defendants specifically target young adults in their advertising and promotional campaigns. The defendants have acted in concert with each other and retailers to effect the illegal sales of cigarettes to minors. Their efforts are evidenced in contracts and records concerning promotional displays and the distribution of branded non-tobacco items, such as hats and tee shirts. The promotional items are often directed to retailers who are in close proximity to colleges and high schools. The plaintiffs claim that, as a direct consequence of the defendants' efforts, minors have spent billions of dollars on illegal purchases of cigarettes resulting in profit and unjust enrichment to the defendants.

The Revised Third Amended Complaint is brought by six named plaintiffs, Jean Clay, Sheba Chears, Jodi Boffeli, Richard Monte-

---

1. It is unclear for what The Tobacco Institute is responsible because is doubtful that The Tobacco Instituted profited from the illegal sales of cigarettes.

rosso, Doreen Olsen, and Philip Emily, all of whom began smoking before the age of eighteen. Each allegedly purchased and smoked cigarettes manufactured, promoted, or sold by the defendants while the defendants were engaged in the unlawful activity previously described. These plaintiffs began smoking for a variety of reasons, primarily because of peer pressure and for social acceptance. Jean Clay (age 72) began smoking at age 15 after a friend offered her a cigarette at the local confectionary; almost immediately thereafter she bought cigarettes with her lunch money. Sheba Chears began smoking at age 16 when a girlfriend offered her a cigarette at school. Soon thereafter, she had an aunt buy cigarettes for her and eventually started buying her own cigarettes. Jodi Boffeli began smoking at age 15 when a friend gave her a cigarette at a local restaurant. She later bought cigarettes out of vending machines. Richard Monterosso began smoking at age 13 when a friend offered him a cigarette on the streets in his neighborhood. Doreen Olsen began smoking at age 14 and has continued smoking through today; she is now 40. She began smoking when a girlfriend offered her a cigarette at the girlfriend's home.[2]

## II. Background

The plaintiffs brought this ten-count complaint against the defendants, alleging that: 1) the defendants engaged in a civil conspiracy with themselves and retailers to effect illegal sales of cigarettes to children; 2) the defendants supplied to children a product that the defendants knew was unsafe for its intended use in violation of the Restatement (Second) of Torts Section 389; 3) the defendants were unjustly enriched by illegal sales of cigarettes to minors; 4) the defendants violated the consumer protection statutes of Illinois, Kentucky, North Carolina, New York, the District of Columbia, and Delaware; and 5) the defendants should be held strictly liable for supplying a defective and unreasonably dangerous product pursuant to the Restatement (Second) of Torts Section 402A. As explained by the plaintiffs, "the purpose of this litigation is to call attention to

the tobacco industry's efforts [to target sales of cigarettes to minors], to cause the industry to cease its illegal practices, and to prevent the industry from retaining any profit from its past illegal practices." Doc. no. 169, at 3. The plaintiffs specifically seek "disgorgement of monies defendants received from the illegal sale of cigarettes to plaintiffs and the members of the class while they were children, which funds shall be used for the benefit of the class as determined by the Court in equity for collective purposes, such as to develop and facilitate cessation [programs] for persons who elect to participate therein, including persons who are addicted, and to fund research concerning the effects of smoking cigarettes." Doc. no. 149. The plaintiffs also seek "punitive or exemplary damages in an amount sufficient to punish defendants and to deter them and others from similar wrongdoing." Doc. no. 149.

At the class certification hearing, the plaintiffs presented several exhibits that might indicate that the defendants have targeted people under the age of 18 with their cigarette marketing. According to the plaintiffs, the defendants have used polling and statistical research to measure trends in teenage smoking, used focus group research that included smokers under age 18, intentionally packaged their products in a manner that was appealing to young people, used promotional activities, including free gifts, that were appealing to young people, and directly targeted their advertising campaigns to minors, using Joe Camel as an example. Specifically, the plaintiffs direct the Court to various internal memorandums produced by the defendants. Therein, certain executives acknowledge the importance of attracting young adults to their product. For example, one executive stated, "there is certainly nothing immoral or unethical about our Company attempting to attract [underage] smokers to our products." Pl.Ex. 9. The same executive recognized the importance of developing new products attractive to young adults and of utilizing factors that influence "presmokers to try smoking, learn to smoke and become confirmed smokers." *Id.*

---

**2.** The parties did not submit excerpts of the deposition testimony of plaintiff Philip Emily.

The plaintiffs argue that each of their claims is properly brought as a class action and can be proven in terms of a class. Under a theory of civil conspiracy, the plaintiffs allege that the defendants entered into agreements among themselves and with cigarette retailers which had as their objective the sale of cigarettes to children. In furtherance of the conspiracy, the defendants sold cigarettes, or caused their cigarettes to be sold, to minors. The plaintiffs will present evidence that shows that the defendants dedicated significant funds to the research of the psychiatry, preferences, and buying habits of children and, more specifically, what types of cigarette products would be most appealing to young adults. The defendants then aligned their marketing strategies and new product development with the results of this research. As a result of these actions, the members of the class were damaged by spending money as minors to purchase cigarettes in violation of state criminal law.

The plaintiffs allege that the defendants have been unjustly enriched because they intentionally marketed and sold their products to minors in violation of statutes making it illegal to sell tobacco to minors. The plaintiffs' theory is that "the defendants' sales to the class members, while the class members were minors, constituted an illegal act and an invasion of a legally protected interest, and allowing the defendants to retain the benefits they received as a result of these sales would be unjust, therefore, the defendants must make restitution to the class members." Doc. no. 169. "It would be unconscionable," according to the plaintiffs, "for the tobacco companies to retain profits earned on the illegal sales of cigarettes to children." Doc. no. 182.

The plaintiffs also bring claims under various state consumer protection acts. The plaintiffs allege that the defendants' conduct is actionable under the state consumer fraud statutes because, by targeting minors for the sale of cigarettes, the defendants have intentionally violated the state statutes which prohibit such sales, and have engaged in acts that are unfair or deceptive. In proving these claims, the plaintiffs will focus on the defendants' conduct to show that such conduct constituted an "unfair" or "deceptive" practice. Plaintiffs claim that they can show causation and damage on a classwide basis because the class members all spent money as minors to purchase cigarettes in violation of the law at a time when the state legislatures had determined as a matter of law and policy that minors could not make an informed decision about whether to purchase and smoke cigarettes. The evidence at trial will establish that the defendants created an atmosphere among America's youth that not only made cigarette smoking socially acceptable, but rendered the habit a necessity.

Under the Restatement (Second) of Torts Sections 389 and 402A, the plaintiffs will prove that: 1) the defendants supplied and sold cigarettes to minors; 2) the defendants knew cigarettes could not be made reasonably safe before their expected use; 3) the legislatures of all states had made determinations, embodied in their statutes, that cigarettes are categorically defective and unreasonably dangerous to children; 4) pursuant to these statutes, children cannot as a matter of law consent to the use of cigarettes; and 5) the defendants intended that minors purchase and smoke their cigarettes. The selling and distribution of cigarettes to minors, to which they cannot legally consent, and their subsequent smoking of those cigarettes and inhalation of the toxins, constitutes a classwide physical harm.

Finally, the plaintiffs argue that their proposed remedy, disgorgement of profits from illegal sales to minors, can be proven on a classwide basis. Because this remedy measures the recovery from the defendants' perspective, the plaintiffs' proof will focus on the defendants' yearly cigarette sales to minors and the profits generated by such sales, rather than focusing on each class members' individual cigarette purchases.

### III.   Class Certification Standards

■ Rule 23 of the Federal Rules of Civil Procedure governs class certification determinations. It requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED.R.CIV.P. 23(a). "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police Assoc. v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993) (citing Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993)). It is the moving party's burden to establish that each of the prerequisites of Rule 23 are satisfied. *General Tel. Co. of S.W. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Valentino v. Howlett,* 528 F.2d 975 (7th Cir.1976).

If all of the elements of Rule 23(a) are met, the moving party must also show that one of the elements outlined in Federal Rule of Civil Procedure 23(b). *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 611–613, 117 S.Ct. 2231, 2244, 138 L.Ed.2d 689 (1997) ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."); *see also Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). The plaintiffs in this case seek class certification under Rule 23(b)(2), which provides for certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED.R.CIV.P. 23(b)(2). The Court has the authority to certify the class on some issues and refuse to certify the class on others. FED.R.CIV.P. 23(c)(4).

When determining a motion for class certification, the Court deems as true all of the allegations in the complaint. *See Johns,* 145 F.R.D. at 482. Moreover, the Court does not consider the merits of the case; rather, the Court focuses on whether the certification requirements are satisfied. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974) (Rule 23 does not "give a court authority to conduct a preliminary inquiry into the merits of a suit to determine whether it may be maintained as a class action"); *In re VMS Sec. Litig.,*

136 F.R.D. 466, 473 (N.D.Ill.1991). Thus, the Court's role in the action currently under review is to determine whether the plaintiff is asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23. *See* H. Newberg, *Newberg on Class Actions,* § 24.13 (3d ed.1992).

Nonetheless, the determination of a class certification motion may involve some consideration of the factual and legal issues that comprise the plaintiff's cause of action. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). While the Court may not consider arguments directly on the merits, it takes into account the substantive elements of plaintiffs' claims and it looks to the proof necessary to those elements so as to envision the form trial on those issues would take. *Elliott v. ITT Corporation,* 150 F.R.D. 569, 573 (N.D.Ill.1992) (citing *Simer v. Rios,* 661 F.2d 655, 672 (7th Cir.1981)). Throughout this analysis, the Court bears in mind that a principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner. *See General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

The Court must rigorously assess whether the prerequisites have been met and, if the party seeking class certification meets each of them, the Court must certify the proposed class. *See Falcon,* 457 U.S. at 161, 102 S.Ct. 2364; *Vickers v. Trainor,* 546 F.2d 739, 747 (7th Cir.1976); *Fujishima v. Board of Educ.,* 460 F.2d 1355, 1360 (7th Cir.1972). The Court has broad discretion to determine whether a proposed class satisfies the requirements, *Patterson v. General Motors Corp.,* 631 F.2d 476, 480 (7th Cir.1980), and should err in favor of maintaining class actions, *King v. Kansas City Southern Indus.,* 519 F.2d 20, 26 (7th Cir.1975). This Court retains the power to alter or amend the definition of a proposed class before a final decision on the merits. *See* FED. R.CIV.P. 23(c)(1); *Metropolitan Area Hous. Alliance v. United States Dep't of Hous. & Urban Dev.,* 69 F.R.D. 633, 637 n. 7 (N.D.Ill.

1976); Wright, et al., *Federal Practice & Procedure,* § 1760 (2d ed.1986).

### IV. Implied Prerequisites to Class Certification

■ Before the Court can address the issues raised by Rule 23(a), two implied prerequisites to class certification exist. First, the class must be sufficiently defined so that the class is identifiable. *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). Second, the named representatives must fall within the proposed class. *Id.*

■ It is absolutely necessary that for a class action to be certified, the class must be susceptible to a precise definition. Therefore, the class description must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria. *Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394, 397 (N.D.Ill. 1987). The definition of a class should not be so broad so as to include individuals who are without standing to maintain the action on their own behalf. The Seventh Circuit Court of Appeals has stated repeatedly that whether the description of a class is sufficiently definite to permit ascertainment of the class members must be determined on a case-by-case basis. *Alliance to End Repression,* 565 F.2d at 977.

■ The plaintiffs propose a class defined as "all persons in the United States who, as children, purchased and smoked cigarettes designed, manufactured, promoted, or sold by the defendants. (Excluded from the class are residents of Louisiana, Maryland, New York, and Utah)." At first blush this definition may seem acceptable, but upon closer scrutiny the tendered definition is like trying to nail smoke to a wall—it can't be done. According to the plaintiffs' evidence, thousands of teens start smoking every day. If the Court were to certify the class as defined by the plaintiffs, a new set of plaintiffs would be added to the class each day. Although it is permissible to encompass fu-

ture members, the multitude of potential new members is unmanageable. The proposed class also fails to distinguish between current smokers and former smokers, choosing instead to encompass everyone. The actual number of potential class members is enormous and, more importantly, amorphous. At no time during this case would the exact membership of this class be ascertainable. It is nearly impossible for this Court to fathom a class in this case that would be sufficiently definite. Nevertheless, even if the Court were to utilize its broad discretionary powers and attempt to redefine the membership of this class, such efforts would be futile because the plaintiffs have not met the requirements of Rule 23.

### V. Rule 23(a) Prerequisites

Under Rule 23(a), a plaintiff seeking class certification bears the burden of showing that the four prerequisites have been met. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Retired Chicago Police Association,* 7 F.3d at 596. "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police Assoc.,* 7 F.3d at 596.

### A. Numerosity of Parties

■ Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. FED.R.CIV.P. 23(a)(1). When the class is large, numbers alone may be dispositive of numerosity. *See Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986). The defendants do not challenge the numerosity of the proposed class, and rightly so. This action is brought on behalf of a nationwide group of smokers and nonsmokers that purchased and smoked cigarettes prior to reaching the age of majority. According to various estimates, 70 percent of all high school students have tried cigarettes, and over 43 percent are daily users of tobacco. Other studies indicate that 82 percent of all smokers began smoking before the age of 18. Given these staggering figures, the numerosity requirement is clearly met.

## B. Commonality of Issues

A named class representative may sue on behalf of the class only if there are questions of law or fact common to the class. This commonality requirement serves the dual purposes of 1) fair and adequate representation of the interests of absent class members and 2) practical and efficient case management. 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.23 (3d ed.1999). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992)). Common nuclei of fact are typically manifest where the defendants have engaged in standardized conduct towards members of the proposed class. *Id.* See also *Chandler v. Southwest Jeep–Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D.Ill.1995). Some factual variation in the details of individual claims does not defeat a finding of commonality. *Rosario*, 963 F.2d at 1017. Courts give Rule 23(a)(2) a "highly permissive reading," requiring plaintiffs to show only that there is more than one issue of law or fact in common. See *Markham v. White*, 171 F.R.D. 217, 222 (N.D.Ill.1997); *Wagner v. NutraSweet Co.*, 170 F.R.D. 448, 451 (N.D.Ill.1997). Though the commonality requirement is permissive, an issue of law or fact is not "common" unless its resolution "will advance the litigation." See *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998).

The plaintiffs argue that each potential class member's claim arises out of the same core of operative facts, "namely the defendants' standardized conduct towards members of the proposed class—targeting children in the promotion, marketing and sales of cigarettes, and thereby effecting and profiting from the illegal sales of cigarettes." Doc. no. 169 at 30.

The plaintiffs have raised ten separate counts in their complaint. The essence of each claim is that the defendants violated criminal statutes and, therefore, equity requires that they not be allowed to keep their ill-gotten gains. Assuming that the plaintiffs' allegations are true, this conduct was done uniformly as to each potential class member. The plaintiffs would advance the litigation if they were able to prove that the defendants conspired to target minors with their marketing programs, actually targeted minors with their advertising, and profited from this misconduct. Because the defendants' conduct was allegedly consistent, the highly permissive commonality requirement is met in this case regardless of the individual requirements that are necessary to prove their various causes of actions.

## C. Typicality of Claims and Defenses

Whether the named plaintiffs' claims are typical of those of the class members they represent is closely related to the commonality inquiry, but problems with commonality often take on greater significance in the typicality requirement. See *Rosario*, 963 F.2d at 1018 ("The question of typicality in Rule 23(a)(3) is closely related to the ... question of commonality."). Subsection (a)(3) directs the Court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* Despite the apparent similarity, the commonality and typicality requirements serve different functions. The commonality requirement questions the relationship of the claims among the class itself, while the typicality requirement focuses on the relation between the representatives and the class as a whole. The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3). *Rosario*, 963 F.2d at 1018. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. *De La Fuente*, 713 F.2d at 232. Thus, similar legal theories may control even in the face of different facts. *Id.* Properly applied, these guidelines should uphold the rationale behind the

typicality requirement, namely that "a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with the those of the representative." *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 543–544 (W.D.Wis. 1998) (quoting 1 Newberg and Conte § 3.13).

▮▮▮ The plaintiffs argue that their claims are typical to the proposed class members because each class member's claims have arisen from the same practices and course of conduct. The defendants acted in concert to market their cigarettes to children and to effect the illegal sales of cigarettes to children. Because each of the plaintiffs asserts the same causes of actions against the defendants and each plaintiff was harmed in the same manner, the named plaintiffs argue that their claims satisfy the typicality requirement.

Limitations exist, however, under the typicality requirement, "particularly when the claimed injury is tied to a complex course of conduct engaged in by the defendants over a long period of time, as opposed to a single act to which all class members have been exposed equally." *Id.* 186 F.R.D. at 544. The Seventh Circuit Court of Appeals recognized this problem in *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir.1993). Therein, the association brought a class action against the City of Chicago, claiming that the city had promised free lifetime health care but later reneged on the promise. The court found that the typicality requirement was not satisfied because it was not possible to assume that the oral communications reached each of the proposed class members in the same manner and with the same message. *Id.* at 597. The court noted,

> [t]hese claims turn on representations allegedly made by the City and the Funds to various groups of city workers.... Appellants have not provided any evidence other than speculation that any alleged communications by the City or the Funds to the fire, laborer, or municipal annuitants were the same as those made to the police. Even among the police, the record indicates that some annuitants heard these communications at retirement seminars,

some read a booklet, some heard through word of mouth, and many simply had a general impression of the benefits to which they were allegedly entitled. Some were ignorant of any alleged promises.

Id. at 597.

Another similar situation arose in *Insolia v. Philip Morris, Inc.*, 186 F.R.D. 535, 543–544 (W.D.Wis.1998). *Insolia* was a civil action for declaratory and monetary relief brought by a group of individuals on behalf of a proposed class of Wisconsin residents, all of whom began smoking before 1964, consumed at least one package of cigarettes a day for twenty years, and were diagnosed with lung cancer. The court found that the claims of the class representatives were not typical of one another or of the entire proposed class. *Id.* at 544–545. The court explained that a wide variation existed among the plaintiffs as to the extent of exposure to tobacco propaganda and the extent to which this propaganda played a role in their respective decisions to smoke. *Id.* The fundamental problem in the plaintiffs' claim was that "all members of the proposed class were not subject to the same allegedly unlawful statements and [those] statements did not affect class members equally". *Id.*

In this case, the plaintiffs' claims are not consistent among each other and are not sufficiently typical of the class to support class certification. The plaintiffs allege that the defendants intentionally targeted minors with cigarette advertising and therefore were unjustly enriched by the resultant illegal sales. However, every claim under which the plaintiffs seek relief requires a showing of causation between the alleged misconduct and the damages. The causal connection necessarily requires a showing that the advertising reached each class member. However, all members of the proposed class were not subjected to the same advertising and that advertising did not have a similar effect on all members. To the extent that the advertising actually reached the class members, it arrived through different mediums and with greatly varying degrees of success. As the *Insolia* court noted, "adults and adolescents alike are susceptible to a great number of influences....A class members par-

ents, siblings, spouse, children, physician, colleagues, friends and the like are certainly capable of playing a large role in the decision to smoke; just how large, is bound to vary from plaintiff to plaintiff." *Id.* at 544–545. Given the great variances between the named plaintiffs' claims and each proposed class member's claims, it would be unfair to hold the class members accountable for the named plaintiffs' potential insufficiencies in proving their case.

It is not sufficient for the plaintiffs to argue that the defendants created a climate or atmosphere that rendered smoking acceptable. That atmosphere undoubtedly varied from region to region and, as plaintiffs' counsel himself noted during the hearing, society had as much influence on the decision to smoke as did the defendants' advertising. At age 13, plaintiffs' counsel wanted to be 16; at age 16, he wanted to be 18 or 21. This was not the result of the defendants' advertising cigarettes. It was the result of growing up in America where teenagers want to be like adults and do adult things; such feelings are inherent in our society. Undoubtedly, movies showing Humphrey Bogart and Lauren Bacall smoking cigarettes had as much impact on the atmosphere as did the defendants' marketing strategies. If the plaintiffs' argument was acceptable, then this Court could hold car manufacturers civilly liable for damages caused by underage drivers because they advertise sports cars that are attractive to young adults. This is not the route intended by our jurisprudence. Proof that a climate of acceptability existed generally is insufficient to show causation, which by its very nature requires an individualized determination.

### D. Adequacy of Representation

■■■ The named plaintiffs are also inadequate representatives of the proposed class. The adequacy of representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Adequacy of representation is composed of two parts: 'the adequacy of the named plain-

tiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Assn.* 7 F.3d at 598 (quoting *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986)). Therefore, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims" or if class counsel is not sufficiently qualified to conduct the proposed litigation. *Rosario,* 963 F.2d at 1018.

■■■ The plaintiffs' proposed class creates several problems with the adequacy of the representation. First, the proposed class includes current and former smokers. The named plaintiffs, all of whom are current smokers, cannot possibly share the same interests with the members of the class who are former smokers. The named plaintiffs seek to recover funds to be used for smoking cessation programs, a relief that would be of absolutely no value to a former smoker. Secondly, the named plaintiffs do not seek to recover for personal injury. A judgment against the proposed class in this case would likely preclude recovery by other potential plaintiffs, who fit within the class definition, for personal injury. *See, e.g., Small v. Lorillard Tobacco Co.,* 252 A.D.2d 1, 679 N.Y.S.2d 593, 601 (N.Y.1998). The election of a remedy that does not benefit the entire class (i.e. cessation programs for non-smokers) and that is not the remedy that would be chosen by the entire class (i.e. failure to account for a more lucrative personal injury claim) creates a conflict of interest. This conflict renders the plaintiffs' representation of the class as a whole inadequate. *Gilpin v. American Fed'n of State, Cty., and Mun. Employees,* 875 F.2d 1310, 1313 (7th Cir.1989).

### VI. Rule 23(b)(2) Requirements

■■■ In addition to failing the mandates of Rule 23(a), this case clearly falls outside the purview of Rule 23(b)(2). The plaintiffs seek class certification under Rule 23(b)(2) only; they do not seek certification alternatively under Rule 23(b)(1) or (b)(3).[3] The

---

**3.** Even if the plaintiffs sought class certification under Rule 23(b)(3), the result would be the

Court may certify a claim under Rule 23(b)(2) if the requirements of Rule 23(a) are satisfied and:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

FED.R.CIV.P. 23(b)(2). The Court must find that the opposing parties' conduct or refusal to act was generally applicable to the class and that final injunctive or declaratory relief with respect to the entire class would be the appropriate remedy. *Retired Chicago Police Assn.*, 7 F.3d at 596. "As a general matter, Rule 23(b)(2) is invoked in cases where injunctive or declaratory relief is the primary or exclusive relief sought." *Buycks–Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 335 (N.D.Ill.1995). Therefore, "the primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members." *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D.Ill.1992). This subsection does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. MOORE'S FEDERAL PRACTICE ¶ 23 App. 04[02]. The dispositive factor that must be assessed in determining whether a class may be certified under Rule 23(b)(2) is the type of relief the plaintiffs actually seek. *Dhamer v. Bristol–Myers Squibb, Co.*, 183 F.R.D. 520, 528 (N.D.Ill. 1998).

The plaintiffs argue that the "general applicability" requirement of Rule 23(b)(2) is satisfied because the defendants have acted in the same manner with respect to all class members by selling or causing the sale of cigarettes to them while they were minors. The "general applicability" requirement of Rule 23(b)(2) means that "the party opposing the class must have acted in a consistent manner toward members of the class so that [its] actions may be viewed as part of a pattern of activity." *Edmondson v. Simon*, 86 F.R.D. 375, 382–83 (N.D.Ill.1980). However, "[a]ll the class members need not be aggrieved by or desire to challenge the defendants' conduct." *Id.* In the instant case, the general applicability requirement is satisfied by the plaintiffs' allegations that the defendants engaged in concerted advertising that targeted minors generally. The allegations make clear that the marketing was conducted uniformly as to all members of the proposed class.

The plaintiffs also assert that their requested relief is primarily injunctive. To determine whether the named plaintiffs seek primarily equitable relief or money damages, the plaintiffs' specific request for relief must be closely scrutinized and consideration must be given to whether the "crux of the action is for money damages." *Dhamer*, 183 F.R.D. at 529 (quoting *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 479–80 (D.Colo.1998)). This case is, without a doubt, about money. The plaintiffs seek disgorgement of all profits gained by the defendants from the illegal purchases of cigarettes. Although the plaintiffs classify this remedy as "an equitable one," it is an equitable remedy that has as its underlying product millions of dollars. Moreover, the plaintiffs seek punitive damages, which can be awarded in only one form: money. The plaintiffs recognize that this case is about money. They describe the injury as "pecuniary in nature" in their brief supporting their motion for class certification. Doc. 169 at 47. During the hearing, counsel for the plaintiffs stated in reference to damages, "Money is it."

Moreover, the prayer for relief in the plaintiffs' complaint requests five specific awards: 1) class certification, 2) disgorgement of all profits from illegal sales of cigarettes to minors, 3) punitive damages, 4) costs and fees of suit, and 5) "[a]ny other

---

same. Rule 23(b)(3) requires that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. FED.R.CIV.P. 23(b)(3). In order to satisfy this requirement, the plaintiff must show that the common issues not only exist but outweigh the individual questions. *Dhamer v. Bristol–Myers Squibb Co.*, 183 F.R.D. 520, 529 (N.D.Ill.1998). In this case, the individual questions far outweigh the common issues, and, therefore, the predominance requirement is not met. Accordingly, this case would fail certification under Rule 23(b)(3) also.

monetary, injunctive, equitable, declaratory, or other relief the Court deems to be just and appropriate." Clearly, if the plaintiffs' primary reason for bringing this lawsuit was injunctive relief, it should have been highlighted in the prayer for relief. Under no circumstances should a plaintiff leave its primary goal to the whim of the Court in a catch-all provision, such as "all other relief the Court deems proper." The plaintiffs left this decision to the Court's imagination because apparently it was not something they specifically desired. Although "Rule 23(b)(2) does not preclude monetary damages when it is either part of the equitable relief granted or is secondary or ancillary to the predominant injunctive or declaratory relief sought," *Orlowski v. Dominick's Finer Foods, Inc.*, 172 F.R.D. 370, 375 (N.D.Ill.1997), it is obvious that the primary relief sought by the plaintiffs in this case is monetary relief; it is not "secondary or ancillary."

The plaintiffs also argue that they do not seek compensatory damages; rather, the equitable relief sought is designed to benefit the class as a whole and not each class member individually. According to the plaintiffs, when the relief sought does not contain individual interests, it is equitable in nature and allows for class certification under Rule 23(b)(2). The plaintiffs cite to several cases in support of their claim, but each of those cases involved a Rule 23(b)(2) certification where injunctive relief was the primary objective. *See e.g. Orlowski v. Dominick's Finer Foods, Inc.*, 172 F.R.D. 370 (N.D.Ill.1997) (finding that monetary damages were not the principal relief sought); *Buycks–Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322 (N.D.Ill.1995) (certifying class for injunctive relief and denying certification for monetary damages). *See also Williams v. Lane*, 129 F.R.D. 636, 639 (N.D.Ill.1990); *Lawson v. Metropolitan Sanitary Dist. of Greater Chicago*, 102 F.R.D. 783, 793 (N.D.Ill.1983); *Edmondson*, 86 F.R.D. at 383. The Court finds that money damages are the true primary objective of this lawsuit and that injunctive relief is merely secondary. Accordingly, this case is not properly certified under Rule 23(b)(2).

## VII. *Manageability of the Case*

The plaintiffs have failed to establish the requirements of Rule 23(a) and have failed to show that their claim is properly certified under Rule 23(b)(2). Even if the necessary prerequisites had been met, the claim is totally unmanageable as a class action because of the variations in state law and the significant number of individualized elements of proof. Although Rule 23(b)(2) does not expressly contain a predominance and superiority requirement as does Rule 23(b)(3), certification under Rule 23(b)(2) "does not relieve a court of its obligation to determine whether the existence of individual issues precludes certification." *Dhamer*, 183 F.R.D. at 529 (quoting *Barnes v. American Tobacco Co.*, 176 F.R.D. 479, 500 (E.D.Pa. 1997)). A Rule 23(b)(2) class should actually have more cohesiveness than a Rule 23(b)(3) class. *Id.* For these reasons, "Rule 23(b)(2) may not be invoked in a case requiring significant individual liability or defense issues which would require separate hearings for each class member in order to establish the defendants' liability." *Arch v. American Tobacco Co.*, 175 F.R.D. 469, 482 (E.D.Pa.1997). The individualized proof required by the criminal statutes and the states' common laws predominate over the common issues in this case and render class certification inappropriate. Again, the Court should not consider merits of the claims at the class certification stage, but it must take into account the substantive elements of plaintiffs' claims so as to envision the form trial on those issues would take. *Elliott*, 150 F.R.D. at 573. A jury trial on these issues would be unmanageable.

### 1. *Criminal Statutes*

The cornerstone of the plaintiffs' claims is that the defendants violated state criminal laws and public policy by selling cigarettes to minors. The plaintiffs seek to include residents of every state except Louisiana, Maryland, New York, and Utah. Every included state has passed legislation that prevents the sale of cigarettes to minors. For the plaintiffs to have any chance of succeeding in this lawsuit, they must show that the defendants' conduct violated the criminal statutes of

those states. Obviously, if the defendants' conduct was legal, the retention of profits from the challenged sales would not be unjust. As the defendants correctly note, however, the plaintiffs do not even attempt to establish that the defendants' alleged conduct violated the criminal statutes.

The state tobacco statutes contain several variations. First, they vary as to what conduct is regulated. Most of the statutes hold a person or company liable only if they "sell," "give," "furnish," or "deliver" tobacco directly to a minor. In Illinois, for example, "[n]o person shall sell, buy for, distribute samples of or furnish any [tobacco product] to any minor under 18 years of age." 720 ILL.COMP. STAT. 675/1 (West 1998). Other statutes make it "illegal to sell, deliver, barter, furnish, or give, *directly or indirectly*, to any person who is under 18 years of age, any tobacco product." FLA.STAT. ch. 569.101 (West 1999) (emphasis added); *see also* GA. CODE ANN. § 16–12–171 (West 1998) (holding a person liable for selling, directly or indirectly, tobacco products to a minor).

Second, the statutes vary as to whom will be held liable for an illegal sale to a minor. In some states, the defendants are not even subjected to the tobacco statutes; in other states, the tobacco companies are clearly regulated by the statutes. For example, in Illinois it is illegal for a "person" to furnish tobacco products, while California punishes "every person, firm, or corporation" that sells tobacco to a minor. 720 ILL.COMP.STAT. 675/1; CAL.PENAL CODE § 308 (West 1998).

The statutes also vary regarding potential mitigating circumstances. Several states require that the seller "knowingly" distribute the cigarettes to minors. For example, Arizona punishes "a person who *knowingly* sells, gives or furnishes" tobacco to a minor. ARIZ. REV.STAT. § 13–3622 (West 1998) (emphasis added). Similarly, in Texas, it is illegal to sell tobacco to a minor only if the sale is done "with criminal negligence." TEXAS HEALTH & SAFETY CODE ANN. § 161.082 (West 1998). If the mental state requirement is not satisfied, the seller of the tobacco cannot be held criminally liable.

Like the mens rea requirement, most states recognize a defense to prosecution if the seller reasonably relied on identification provided by the minor. The Wisconsin statute creates a defense if the seller can prove that the purchaser falsely represented his age, that the appearance of the purchaser was such that an ordinary person would believe the purchaser was over 18, and that the sale was made in good faith. WISC.STAT. § 134.66(3) (1998). Other statutes are far more simple. Colorado states that "[i]t shall be an affirmative defense . . . that the person furnishing the tobacco product was presented with and reasonably relied upon a document which identified the person receiving the tobacco product as being eighteen years of age or older." COLO.REV.STAT.ANN. § 19–13–121(1) (West 1998). Other states provide no defense to prosecution under their tobacco statutes. *See, e.g.,* VT.STAT.ANN. tit. 7, § 1003 (West 1999).

Despite these variations, the statutes do possess some similarities. None of the criminal statutes creates a private right of action. In addition, almost every state (38 out of 47) punishes the minors themselves for purchasing or possessing tobacco. The Alaska statute, for example, makes it illegal for "a person under 19 years of age" to "knowingly possess" a tobacco product. ALASKA STAT. § 11.76.105 (Michie 1998). Similarly, Arizona punishes "a minor who buys, or has in his possession" any tobacco product. ARIZ. REV.STAT. § 13–3622.

This summary only touches upon the many differences that exist among the state criminal statutes. Even if the plaintiffs prove the alleged common conduct by the defendants, they would not necessarily have proved that each sale was illegal. Rather, the conduct would have to be analyzed taking into consideration the laws of 47 different states and their particular nuances. It may be necessary to evaluate every single allegedly illegal sale because, in many situations, the sale may have been legal or the seller may have possessed a defense. As previously noted, if the particular sale of the tobacco product was lawful, it is not unjust to allow the defendants to retain the profits generated therefrom. Because the alleged generally applicable conduct may not have been illegal in every state and in every instance, the com-

mon facts surrounding the defendants' conduct are insufficient to overcome the need for individualized proof. *Schwartz v. Upper Deck, Co.,* 183 F.R.D. 672, 683 (S.D.Cal.1999) (The "defendants' conduct ... is not a common source of illegal activity without reference to *uncommon* questions of law and fact.").

### 2. Common Law Claims

Even if the Court ignored the problems raised above, the variations in the states' common laws and the individualized proof necessary for each of the common law claims render the class unmanageable. The plaintiffs bring four common law tort claims: 1) civil conspiracy, 2) unjust enrichment, 3) negligent supply of an inherently unreasonable product in violation of the Restatement (Second) of Torts Section 389, and 4) strict liability under the Restatement (Second) of Torts Section 402A. The plaintiffs argue that these legal theories are capable of classwide proof and that, under Illinois' choice of law principles, application of the laws of the states in which the defendants have their principal place of business is appropriate. A proper application of the Illinois choice of law principals, however, demonstrates that the laws of each of the 47 states would have to be applied.

### a. Choice of Law

A district court sitting in diversity applies the forum state's choice of law rules to determine which state's substantive law applies. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *S.A. Healy Co. v. Milwaukee Metropolitan Sewerage District,* 50 F.3d 476, 478 (7th Cir. 1995). In tort cases, Illinois has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. *See Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970). As its name implies, the "most significant relationship" test looks for the state that bears the most significant relationship to the occurrence and the parties involved in the action, and then applies that state's laws. *Miller v. Long–Airdox Co.,* 914 F.2d 976, 978 (7th Cir.1990).

The Restatement (Second) of Conflicts of Laws Section 145(2) lists several contacts a court should analyze when determining which state has the most significant relationship with the litigation, including: the place where the injury occurred; the place where the conduct causing the injury occurred; the parties' domiciles, residences, places of incorporation, and places of business; and the place where the parties' relationship, if any, is centered. *Esser v. McIntyre,* 169 Ill.2d 292, 214 Ill.Dec. 693, 661 N.E.2d 1138 (1996). "Generally, in a tort case, the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred." *Miller,* 914 F.2d at 978. Illinois law presumes that the law of the state where the injury occurred will govern "unless another state has a more significant relationship to the occurrence or to the parties involved." *Ferguson v. Kasbohm,* 131 Ill.App.3d 424, 86 Ill.Dec. 605, 475 N.E.2d 984, 986 (Ill.App.Ct.1985). "This presumption is most difficult to overcome where the conduct causing the injury occurred in the same state where the injury occurred." *Miller,* 914 F.2d at 978. "When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most issues involving the tort." *Id.* (quoting Restatement Section 145, Comment e, at 420).

The plaintiffs claim that the law of the state in which each defendant has its principal place of business should be applied. Therefore, the plaintiffs ask the Court to apply the common law of New York for claims against Phillip Morris and Lorillard, Kentucky for claims against Brown & Williamson, North Carolina for claims against RJR, and the District of Columbia for claims against The Tobacco Institute.

However, it is likely that the Court would have to apply the law of all 47 states involved. According to the plaintiffs, the defendants' conduct involved illegally targeting minors in the defendants' marketing campaigns. Even assuming that the defendants conjured up their plan in the states where they have their principal places of business,

the actual plan was carried out nationally. Print ads, television ads, and radio ads were broadcast nationally and regionally, point-of-sale promotions and advertisements were disseminated at the location of each transaction, and promotional items were distributed at the location of special events.

The plaintiffs also claim that their injury was the actual purchase of the cigarettes and the money spent on those purchases. Obviously this occurred at the location of each sale, and each sale occurred in one of 47 different states. The plaintiffs have not overcome the presumption in Illinois that the state where the injury and the conduct occurred is the state with the most significant interest.[4] *Miller*, 914 F.2d at 978. They have not made a clear showing that any state has a greater interest in the outcome than does each of the 47 states in which the conduct and injury occurred. *Id.*

Although the Court need not make a final determination on choice of law at this stage of the litigation, this discussion of the problem further exemplifies the difficulty that faces this proposed class. An individualized choice of law analysis must be applied to each plaintiff's claims. Each member of the class will have a different law applied to his or her cause of action depending on the location in which the alleged advertisements reached them and the place in which the plaintiff actually made an illegal purchase of cigarettes. Thus the Court would have to create at least 47 subclasses, assuming that the residents of each state only purchased cigarettes in their home state and were only influenced by the advertising in their home state. If the class members left their home state and purchased cigarettes elsewhere before attaining the age of 18, those outside purchases arguably would have to be analyzed under the state in which the transaction occurred. The legality of the transaction would definitely have to be analyzed under the laws of the second state, and, because the place of the injury occurred in the second state, the second state's common law may have to be applied separately for

that transaction. It is conceivable that an unascertainable number of subclasses would have to be created.

The choice of law question creates an insurmountable obstacle for the plaintiffs to overcome. *See In re Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293 (7th Cir.1995) (recognizing the difficulty of class certification created by differences in the laws of 50 states); *Dhamer v. Bristol–Myers Squibb Co.,* 183 F.R.D. 520 (N.D.Ill.1998) (holding that the differences in state legal standards preclude the certification of a nationwide class under Rule 23(b)(3)). "In short, the number of uncommon issues in this humongous class action ... is colossal." *Castano v. American Tobacco, Co.,* 84 F.3d 734, 743 n. 15 (5th Cir. 1996).

#### b. *Variations and Individualized Proof in State Common Laws*

Because it is likely that the common laws of the 47 states must be applied, the Court must also consider the variations among those states' laws and the proof necessary to maintain a cause of action in each state. As the *Castano* court noted, "variations in state law may swamp the common issues." *Castano,* 84 F.3d at 741. A class cannot be certified under Rule 23(b)(2) if the individualized issues predominate over the common questions of fact. *See Dhamer,* 183 F.R.D. at 529. The following discussion of each common law claim clearly demonstrates that a class as proposed by the plaintiffs would be unmanageable.

#### i. *Civil Conspiracy*

The plaintiffs allege that the defendants entered into agreements among themselves and with cigarette retailers which had as their objective the illegal sale of cigarettes to children. In furtherance of the alleged conspiracy, the defendants sold cigarettes, or caused their cigarettes to be sold, to minors. The members of the class, according to the plaintiffs, were damaged to the extent that they spent money as minors to purchase cigarettes in violation of state law.

---

**4.** Furthermore, other relevant factors point to the application of all 47 states, including the plaintiffs' domicile and the place where the rela-

tionship between the parties is centered. *See Esser,* 214 Ill.Dec. 693, 661 N.E.2d at 1141.

The variations in the civil conspiracy laws of the 47 states render the class action unmanageable. Many of the states require proof that: 1) the parties agreed to participate in an unlawful act, 2) an injury was caused by an unlawful overt act performed by one of the parties to the agreement, and 3) the overt act was done pursuant to and in furtherance of the common scheme. *Lindsay v. Lockwood,* 163 Misc.2d 228, 625 N.Y.S.2d 393, 397 (N.Y.Sup.Ct.1994); *Lockwood Corp. v. Bockhaus,* 129 Colo. 339, 270 P.2d 193, 196 (1954); *Raimi v. Furlong,* 702 So.2d 1273, 1284 (Fla.Dist.Ct.App.1997); *Lipka v. Minnesota Sch. Employees Ass'n,* 537 N.W.2d 624, 632 (Minn.Ct.App.1995); *Stringer v. Car Data Sys., Inc.,* 314 Or. 576, 841 P.2d 1183, 1195 n. 8 (1992). For most states, civil conspiracy is a derivative claim premised on an independent, intentional tort. *See, e.g., Cresser,* 662 N.Y.S.2d at 378. Other states, however, permit a claim for civil conspiracy if the underlying act is criminal. *See Marshak v. Marshak,* 226 Conn. 652, 628 A.2d 964, 970 (1993). Moreover, some states require a showing that the object of the conspiracy is unlawful. *See Rice v. Hodapp,* 919 S.W.2d 240, 245 (Mo.1996). Other states allow a cause of action where the object of the conspiracy is lawful, but the manner in which the object is obtained is unlawful. *See Wiekhorst Bros. Excavating & Equip. Co. v. Ludewig,* 247 Neb. 547, 529 N.W.2d 33, 39–40 (1995); *Simmons Oil Corp. v. Holly Corp.,* 258 Mont. 79, 852 P.2d 523, 530 (1993). If the overt act is lawful and the means by which the object is attained is lawful, most states will not recognize a claim of civil conspiracy. *Marshak,* 628 A.2d at 970. Therefore, the varying statutory defenses to criminal liability are relevant to the determination of civil liability. As previously noted, 38 of the 47 included states make it illegal for a minor to purchase or possess cigarettes, and several states include a defense where the seller reasonably relied on fake identification. Although it is unclear whether these defenses would preclude liability for civil conspiracy as to each separate class member, they would inevitably require an independent analysis of each separate sale. Finally, it is unclear whether every state authorizes a claim for civil conspiracy. *See Weinberg v. Mauch,* 78 Haw. 40, 890 P.2d 277 (1995) (recognizing, but not adopting, the theory of civil conspiracy). While some similarities exist, the variations in the 47 states' common law of civil conspiracy would render a nationwide class action unmanageable.

Even if the Court were to accept the plaintiffs' choice of law argument and apply only the common law of New York, North Carolina, Kentucky, and the District of Columbia, the claims are not proper for a class action. Generally, these states define civil conspiracy as an agreement between two or more persons to participate in an unlawful act, or in a lawful act in an unlawful manner; one of the parties to the agreement must perform an unlawful overt act in furtherance of the conspiracy which causes an injury. *Lindsay,* 625 N.Y.S.2d at 397; *see also Carson v. Moody,* 99 N.C.App. 724, 394 S.E.2d 194, 198 (1990); *Griva v. Davison,* 637 A.2d 830, 848 (D.C.1994); *Davenport's Adm'x v. Crummies Creek Coal Co.,* 299 Ky. 79, 184 S.W.2d 887, 888 (1940). Most importantly, in each state civil conspiracy depends on the performance of some underlying, independent tortious act performed in furtherance of the conspiracy. Without the independent act, a claim for civil conspiracy does not exist. *See Griva,* 637 A.2d at 848 ("civil conspiracy depends on the performance of some underlying tortious act"). Moreover, the intentional tort must result in and be the proximate cause of the sought after damages.

The plaintiffs argue that they can prove the elements of a civil conspiracy claim. First, they assert that the sale of cigarettes to children is illegal in every state, and, thus, the object of the defendants' conspiracy was illegal. The plaintiffs further argue that the defendants' sales of cigarettes in furtherance of the conspiracy were illegal acts that caused their damages. Doc. no. 169, pg. 15. The plaintiffs claim that they can show causation on a classwide basis and intend to present evidence that the defendants performed studies to determine the psychological profiles of minors, that they operated vending machines to distribute cigarettes to minors, and that the defendants' marketing created an atmosphere that raised the level of acceptance of cigarette smoking among

America's youth. According to the plaintiffs, it is unnecessary to show that any advertisements reached any particular member of the class.

The plaintiffs' argument fails on both counts. First, civil conspiracy requires that the commission of an independent tort in furtherance of the conspiracy caused the plaintiffs' damages. The plaintiffs pled that the defendants targeted minors with their advertising and that the defendants' conduct caused the sale of cigarettes to minors. According to the plaintiffs, this conduct violated state criminal statutes. This conduct is not an independent tortious act, however, because the underlying criminal statutes do not create a private right of action. Because a civil conspiracy is a derivative claim, it requires an overt tortious act independent of the conspiracy. The criminal statutes, which do not create a private right of action, are not a valid basis for civil conspiracy liability in most states.

The plaintiffs also cannot prove causation on a classwide basis. Each state requires an actual causal link between the overt act committed in furtherance of the conspiracy and the damages claimed by the plaintiff. Even if the plaintiffs were able to prove that the defendants intentionally created an atmosphere that made youth smoking acceptable and that this conduct amounted to an independent tort, causation cannot be proven without asking each plaintiff and potential class member why they chose to purchase cigarettes. There is nothing in the record that establishes that each member of the purported class purchased cigarettes as a result of the defendants' targeted advertising. Accordingly, the Court finds that the individual question of causation predominates over the few common issues and that the civil conspiracy claim is not properly certified as a class.

### ii. Unjust Enrichment

The plaintiffs allege that the defendants intentionally marketed and sold their products to minors in violation of statutes making the sale of tobacco to minors illegal. As a result, the plaintiffs claim that the defendants have been unjustly enriched by the profits derived from the illegal sales. The plaintiffs' theory is that "the defendants' sales to the class members, while the class members were minors, constituted an illegal act and an invasion of a legally protected interest, and allowing the defendants to retain the benefits they received as a result of these sales would be unjust, therefore, defendants must make restitution to the class members."

The laws of unjust enrichment vary from state to state and require individualized proof of causation. Under a typical, but certainly not uniform, definition of unjust enrichment, a party may recover if he or she proves "an unjust retention of a benefit, including money, by one party to the detriment of another party, against the fundamental principles of justice, equity, and good conscience." *Douglass v. Wones*, 120 Ill.App.3d 36, 76 Ill.Dec. 114, 458 N.E.2d 514, 521 (Ill.App.Ct.1983). This necessarily means that the plaintiff must show that the defendant was unjustly enriched at the plaintiff's expense. *Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529 (D.Kan.1995). "Unjust enrichment is an equitable doctrine that ... depends upon the analysis of each individual situation." *See Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.1987).

Unjust enrichment requires individualized determinations similar to those required under the theory of civil conspiracy. The plaintiffs have not presented evidence to establish that the question of liability is uniform among all members of the proposed class. Indeed, under the unjust enrichment theory, there are individual questions with regard to whether the class members actually spent money on cigarettes, whether any of them are subject to equitable defenses,[5] and

---

5. For example, the defendants may have the defense of unclean hands against many of the class members and the named plaintiffs. Unclean hands means that "in equity as in law the plaintiff's fault, like the defendant's, may be relevant to the question of what if any remedy the plaintiff is entitled to. An obviously sensible application of this principle is to withhold an equitable remedy that would encourage, or reward (and thereby encourage), illegal activity." *Shondel v. McDer-*

whether the defendants' misconduct caused the particular illegal purchases. Thus, the defendants' liability for unjust enrichment to a particular plaintiff depends on the factual circumstances of the particular purchase at issue. This individual inquiry presents more than a simple question of whether a particular plaintiff can prove damages. Rather, it bears directly on the question of the defendants' liability for unjust enrichment to a particular plaintiff.

Moreover, variances exist in state common laws of unjust enrichment. The actual definition of "unjust enrichment" varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. *See Johnson v. American Nat'l Ins. Co.*, 126 Ariz. 219, 613 P.2d 1275 (Ariz.App.1980). Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571 (Del.Ch. 1998). Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense. *See Polverari v. Peatt*, 29 Conn.App. 191, 614 A.2d 484, 490 (1992) (requiring that the defendant demonstrate that the plaintiff engaged in "willful misconduct"); *Dennett v. Kuenzli*, 130 Idaho 21, 936 P.2d 219, 225 (1997) (A court may deny a plaintiff equitable relief if the plaintiff's "conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy at issue."). Like the claim for civil conspiracy, the claim of unjust enrichment is packed with individual issues and would be unmanageable.

*iii. Restatement Sections 389 and 402A*

Section 389 of the Restatement (Second) of Torts states that

one who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character.

Section 402A of the Restatement Second of Torts states that

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Both of these sections create the same individualized proof problems possessed by the other claims. Both sections require a showing that the defendants' conduct or product was the proximate cause of the damages. As demonstrated above, this requires an analysis of each individual plaintiff. In addition, both sections require that the misconduct or product caused physical harm. The plaintiffs have stated repeatedly that they do not intend to demonstrate any physical harm caused to the named plaintiffs. Without showing physical harm, the named plaintiffs cannot prove the elements of these Restatement sections. Moreover, even if the plaintiffs were to attempt to show physical harm, that showing requires an individualized analysis, not suitable to a class action under Rule 23(b)(2). Accordingly, these claims are not properly brought as a class action.

Even if the claims were susceptible to classwide proof, the elements vary from state to state. As to strict liability, not every state has adopted Restatement Section 402A.

---

*mott*, 775 F.2d 859, 868 (7th Cir.1985). Any class member that violated criminal statutes making it illegal for a minor to purchase ciga-

rettes could be subject to this defense. This necessitates an individualized determination that weighs against class certification.

Some states do not even recognize strict liability in tort. *E.g., Cline v. Prowler Indus.,* 418 A.2d 968, (Del.1980). Other states have developed and adopted their own strict liability law without regard to Section 402A. *Anderson v. Owens–Corning Fiberglas Corp.,* 53 Cal.3d 987, 281 Cal.Rptr. 528, 810 P.2d 549 (Ca.1991). Some have adopted Section 402A, but among those states, there are considerable variations. *See O.S. Stapley Co. v. Miller,* 103 Ariz. 556, 447 P.2d 248, 251–52 (1968); *Shanks v. Upjohn Co.,* 835 P.2d 1189 (Alaska 1992) (no requirement that product is "unreasonably dangerous"). *See also* 5 STUART M. SPEISER ET AL., THE AMERICAN LAW OF TORTS §§ 18.31, 18.34–35 (Law Co-op 1996); 1 LOUIS R. FRUMER & MELVIN I. FRIEDMAN, PRODUCTS LIABILITY § 2.01 (1997) (describing the great variations among state strict liability laws).

The same is true for Section 389 and the claim of negligent supply. Some states have specifically adopted the requirements of Section 389. *E.g., Moody v. Martin Motor Co.,* 76 Ga.App. 456, 46 S.E.2d 197 (1948). Other states have expressly rejected it. *Rogers v. Grunden,* 589 N.E.2d 248 (Ind.Ct.App.1992); *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420 (Tex.1997). Most states, however, have not considered the issue. Given these uncertainties, it would be a daunting task for this Court to determine whether to impose such liability on the defendants for conduct occurring in states that have not considered the issue or have rejected the section altogether. Accordingly, the claims brought under Restatement Sections 389 and 402A are not manageable in a nationwide class action.

### iv. Consumer Protection Statutes

The plaintiffs also allege that the defendants' conduct is actionable under six state consumer fraud statutes: Illinois, Kentucky, North Carolina, New York, the District of Columbia, and Delaware. The plaintiffs argue that, by targeting minors for the sale of cigarettes, the defendants have intentionally violated the state criminal statutes which prohibit such sales, and have engaged in acts that are unfair or deceptive. Under the consumer protection statutes, the plaintiffs' proof will focus on the defendants' conduct to show that such conduct constitutes an "unfair" or "deceptive" practice. Plaintiffs claim that they can show causation and damages on a classwide basis because the class members all spent money as minors to purchase cigarettes in violation of the law at a time when the state legislatures had determined as a matter of law and policy that they could not, as minors, make an informed decision regarding whether to purchase and smoke cigarettes.

The Illinois statute provides:

> Unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 Ill.Comp.Stat. § 505/2. It further states that "[a]ny person who suffers damages as a result of a violation of this Act committed by any other person may bring an action against such person." 815 Ill.Comp.Stat. § 505/10a(a).

The Kentucky statute makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky.Rev.Stat.Ann. § 367.170(1). "Any person who purchases goods and thereby suffers any ascertainable loss of money ... as a result of the use ... may bring an action." Ky.Rev.Stat.Ann. § 367.220.

Under North Carolina law, "unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.Gen. Stat. § 75–1. "If any person shall be injured ... by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person ... so injured shall have a right of action on account of such injury done." N.C.Gen.Stat. § 75–16.

New York is very similar and declares unlawful "[d]eceptive acts or practices in the

conduct of any business in this state." N.Y.Gen.Bus.Law § 349(a). "Any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y.Gen.Bus.Law § 349(h).

The District of Columbia statute makes it unlawful to do many specific acts, none of which seem relevant to this case. *See* D.C.Code Ann. § 28–3904. The statute creates a private right of action in "any consumer who suffers any damage as a result of" a violation of this act. *Id.*

Finally, the Delaware statute provides:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

Del.Code Ann. 6 § 2513. The Delaware Supreme Court found that, although the Act did not specifically create a private remedy, "sound logic and reason dictate that the consumer ought to be able to enforce the same claim in his own right." *Young v. Joyce*, 351 A.2d 857 (Del.1975). Accordingly, the Court held that "this section manifests a clear legislative intent that a consumer who has been damaged by a violation of § 2513 may assert a private cause of action for 'statutory fraud' practiced against him." *Id.* at 859.

Each of the six state statutes requires the plaintiff to show that the defendants' misconduct caused the alleged harm. Although the plaintiffs need not show that they personally relied on the unfair practice, each must establish that the defendants' misconduct was the proximate cause of his or her damages. *See, e.g. Adler v. William Blair & Co.*, 271 Ill.App.3d 117, 207 Ill.Dec. 770, 648 N.E.2d 226, 233 (1995); *Young*, 351 A.2d 857; *Kentucky Laborers v. Hill & Knowlton, Inc.*, 24 F.Supp.2d 755, 773 n. 9 (W.D.Ky.1998);

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 745 (1995); *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C.App. 650, 464 S.E.2d 47, 58 (1995). For the same reasons discussed above, this causation inquiry will involve innumerable individual questions that must be determined as to each plaintiff and each class member. The plaintiffs' theory of recovery necessarily requires a showing that the targeted advertising reached each class member. This cannot be established using classwide proof. What influenced a particular individual to start smoking inevitably varies from person to person. The depositions of the named plaintiffs exemplify this best. Each testified that they started smoking for different reasons, none of which included the defendants' misconduct as a factor. Because the influences surrounding each person's decision to start smoking is pivotal to the determination of liability, the consumer fraud statutes are not proper claims for class certification in this instance.

## VIII. Conclusion

The plaintiffs have failed to meet the prerequisites for class certification under Rule 23(a) and have failed to demonstrate that their claims are properly certified under Rule 23(b)(2). Moreover, a nationwide class action would be unmanageable because of the variations in the state laws and because each claim requires individualized proof that greatly predominates over the few common issues presented in this case. For the foregoing reasons, the plaintiffs' motion for class certification is **DENIED**. Doc. no. 168.

**IT IS SO ORDERED.**